ORIGINAL

1   William J. Becker, Jr., Esq. (California State Bar No. 134545)
    **THE BECKER LAW FIRM**
2   11500 Olympic, Blvd., Suite 400
    Los Angeles, California 90064
3   Tel: (310) 636-1018; Fax: (310) 765-6328
    bbeckerlaw@gmail.com
4   *Affiliate attorney of The Rutherford Institute and the Thomas More Law Center*

5   Robert J. Muise, Esq.* (Michigan State Bar No. P62849)
    **THOMAS MORE LAW CENTER**
6   24 Frank Lloyd Wright Drive
    P.O. Box 393
7   Ann Arbor, Michigan 48106
    Tel: (734) 827-2001; Fax: (734) 930-7160
8   rmuise@thomasmore.org
    * Subject to admission *pro hac vice*
9
    *Co-Counsel for Plaintiffs as listed on the signature page*
10

FILED
2010 JUN 23  A 11: 08
RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NO. DIST. OF SAN JOSE

Paid $  
(5)

ADR

E-filing

11              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
12

13   **JOHN DARIANO** and **DIANNA DARIA-**          Case No.
     **NO**, individually and as next friend on behalf
14   of their minor child **M.D.; KURT FAGER-**      **COMPLAINT** CV10-02745
     **STROM** and **JULIE ANN FAGERSTROM**,
15   individually and as next friend on behalf of     Nature of Action: Civil Rights Case
     their minor child **D.M.**, and **KENDALL**      Under 42 U.S.C. § 1983
16   **JONES** and **JOY JONES**, individually and as
     next friend on behalf of their minor child
17   **D.G.**,

18               Plaintiffs,

19   vs.

20   **MORGAN HILL UNIFIED SCHOOL**
     **DISTRICT; NICK BODEN**, individually and
21   in his official capacity as Principal, Live Oak
     High School, Morgan Hill Unified School
22   District; and **MIGUEL RODRIGUEZ**, indi-
     vidually and in his official capacity as Assis-
23   tant Principal, Live Oak High School, Morgan
     Hill Unified School District,
24
                 Defendants.
25

26

27

28

                                    1

**Complaint**

PVT
BY FAX

Plaintiffs, by and through their undersigned counsel, bring this Complaint against the above-named Defendants, their employees, agents, and successors in office, and in support thereof allege the following upon information and belief:

**INTRODUCTION**

1.     This case seeks to vindicate fundamental constitutional rights.  It is a civil rights action brought pursuant to the First and Fourteenth Amendments to the United States Constitution, Article I, § 2 of the California Constitution, and 42 U.S.C. § 1983, challenging the unconstitutional acts, policies, practices, procedures, and/or customs of Defendants as set forth in this Complaint.

2.     It has been "the unmistakable holding" of the United States Supreme Court for more than 50 years that "students [do not] shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969).  Defendants' content- and viewpoint-based speech restriction, which prohibited Plaintiffs M.D., D.M., and D.G. (hereinafter collectively referred to as "Student Plaintiffs") from conveying a pro-United States of America ("U.S.A.") message by wearing t-shirts depicting images of the American flag at Live Oak High School on May 5, 2010, violates this well-established principle of law.  Moreover, Defendants do not have authority to suspend the constitutional rights of students for one day, even if that day is "Cinco de Mayo."  As the Supreme Court has long held, "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

3.     Plaintiffs seek a declaration that Defendants have deprived them of their constitutional rights; a permanent injunction enjoining the enforcement of Defendants' content- and viewpoint-based speech restriction and the unconstitutionally vague and overbroad policy that

2

**Complaint**

permitted the challenged restriction; and an award of nominal damages for the deprivation of their constitutional rights. Plaintiffs also seek an award of the reasonable costs of litigation, including attorney's fees and expenses, pursuant to 42 U.S.C. § 1988, California Code of Civil Procedure § 1021.5, and other applicable law.

## JURISDICTION AND VENUE

4.     This action arises under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367(a).

5.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court. Plaintiffs' claim for nominal damages is made pursuant to 42 U.S.C. § 1983.

6.     Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## INTRADISTRICT ASSIGNMENT

7.     Pursuant to Civil L.R. 3-2(e) and Civil L.R. 3-5(b), this case is properly assigned to the San Jose Division because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the County of Santa Clara, California.

## PLAINTIFFS

8.     Plaintiffs John and Dianna Dariano are the parents and legal guardians of Plaintiff M.D., a minor, who at all relevant times was a sophomore student at Live Oak High School, which is in the Morgan Hill Unified School District, Morgan Hill, California. Plaintiff John Da-

3

**Complaint**

riano is suing on his own behalf and on behalf of Plaintiff M.D., as his next friend.  Plaintiff Di-anna Dariano is suing on her own behalf and on behalf of Plaintiff M.D., as his next friend.  At all relevant times, Plaintiffs John and Dianna Dariano resided within the Morgan Hill Unified School District.

9.     Plaintiffs Kurt and Julie Ann Fagerstrom are the parents and legal guardians of Plaintiff D.M., a minor, who at all relevant times was a freshman student at Live Oak High School, which is in the Morgan Hill Unified School District, Morgan Hill, California.  Plaintiff Kurt Fagerstrom is suing on his own behalf and on behalf of Plaintiff D.M., as his next friend. Plaintiff Julie Ann Fagerstrom is suing on her own behalf and on behalf of Plaintiff D.M., as his next friend. At all relevant times, Plaintiffs Kurt and Julie Ann Fagerstrom resided within the Morgan Hill Unified School District.

10.     Plaintiffs Kendall and Joy Jones are the parents and legal guardians of Plaintiff D.G., a minor, who at all relevant times was a sophomore student at Live Oak High School, which is in the Morgan Hill Unified School District, Morgan Hill, California.  Plaintiff Kendall Jones is suing on his own behalf and on behalf of Plaintiff D.G., as his next friend.  Plaintiff Joy Jones is suing on her own behalf and on behalf of Plaintiff D.G., as his next friend. At all relevant times, Plaintiffs Kendall and Joy Jones resided within the Morgan Hill Unified School District.

**DEFENDANTS**

11.     Defendant Morgan Hill Unified School District (hereinafter "School District") is a public entity established and organized under, and pursuant to, the laws of California with the authority to sue and be sued in its own name.  Live Oak High School is a school operated by and located within the School District.

4

**Complaint**

12.     Defendant Nick Boden, at all times relevant herein, was the Principal of Live Oak High School acting under color of state law. Defendant Boden is responsible for adopting, implementing, and enforcing School District policies, practices, procedures, and/or customs, including the challenged policy, practice, procedure, and/or custom set forth in this Complaint. Defendant Boden is sued both individually and in his official capacity.

13.     Defendant Miguel Rodriguez, at all times relevant herein, was an Assistant Principal of Live Oak High School acting under color of state law. Defendant Rodriguez is responsible for adopting, implementing, and enforcing School District policies, practices, procedures, and/or customs, including the challenged policy, practice, procedure, and/or custom set forth in this Complaint. Defendant Rodriguez is sued both individually and in his official capacity.

## STATEMENT OF FACTS

14.     On May 5, 2010, Student Plaintiffs and two other students wore patriotic t-shirts depicting images of the American flag to Live Oak High School. A true and accurate photograph of the patriotic t-shirt worn by Plaintiff M.D. on May 5, 2010, is attached to this Complaint as Exhibit 1. A true and accurate photograph of the patriotic t-shirt worn by Plaintiff D.M. is attached to this Complaint as Exhibit 2. A true and accurate photograph of the patriotic t-shirt worn by Plaintiff D.G. is attached to this Complaint as Exhibit 3.

15.     Student Plaintiffs wore their patriotic shirts to Live Oak High School on May 5, 2010, as they had on prior occasions, without incident, to express a message conveying a pro-U.S.A. viewpoint.

16.     Plaintiffs D.M. and D.G. arrived on campus on May 5, 2010, at approximately 7:04 a.m., which is when "zero" period begins. Plaintiff M.D. arrived at approximately 9:15 a.m. due to a previously scheduled medical appointment.

5

**Complaint**

17.     When Student Plaintiffs arrived on the school campus on May 5, 2010, their pro-U.S.A. shirts did not cause any disruption to the school environment.

18.     At approximately 10:05 a.m. on May 5, 2010, Student Plaintiffs attended "brunch break," a scheduled period during the school day, and sat together at a table in the courtyard area of their high school.

19.     From the time Student Plaintiffs arrived on campus on May 5, 2010, up to and including the time they were on "brunch break," their pro-U.S.A. shirts did not cause any disruption to the school environment.

20.     Shortly after "brunch break" began, Defendant Rodriguez confronted Student Plaintiffs at their table. Defendant Rodriguez told the boys that they would not be permitted to wear their pro-U.S.A. shirts and gave them the option of either removing the shirts or turning them inside out. Plaintiffs refused to comply with either option because doing so would disrespect their country and the American flag. When asked by Plaintiff D.M. why the shirts were not permitted, Defendant Rodriguez responded by ordering the boys to go to his office.

21.     On May 5, 2010, Defendants did not object to students at Live Oak High School expressing messages conveying a pro-Mexico viewpoint. In fact, that day many students were expressing a pro-Mexico viewpoint through message-bearing t-shirts and body paint, displaying Mexican flags, and through other forms of speech, including singing and dancing.

22.     Prior to Defendant Rodriguez ordering Student Plaintiffs to remove their pro-U.S.A. shirts or turn them inside out, the shirts had not caused any disruption to the school environment.

23.     Student Plaintiffs complied with Defendant Rodriguez's order to go to his office, and on the way, Plaintiff M.D. contacted his mother, Plaintiff Dianna Dariano, via his cell phone.

6

**Complaint**

During this call, Plaintiff M.D. informed his mother that Defendant Rodriguez was ordering him and his friends to remove or turn inside out their pro-U.S.A. shirts. Plaintiff Dianna Dariano told her son not to do so, and Plaintiff M.D. responded, "Not a chance."

24.     Upon hearing from her son and being told of the situation that he and his friends were facing, Plaintiff Dianna Dariano immediately departed for the school and attempted to contact the other parents.

25.     When Plaintiff Dianna Dariano arrived at Live Oak High School, she went to Defendant Rodriguez's office. Upon arriving, the door was closed, but she could hear what was being discussed and knew that her son was in the room. In particular, she could hear Defendant Rodriguez lecturing the boys about "Cinco de Mayo."

26.     Plaintiff Dianna Dariano entered the office and stood with her son. The other boys stepped outside. While in the office, Defendant Rodriguez reiterated to Plaintiff Dianna Dariano that the boys' pro-U.S.A. shirts were not permitted and began to lecture her about "Cinco de Mayo." Plaintiff Dianna Dariano, herself half-Mexican, took offense, and stated, "Isn't this America?" or words to that effect. Defendant Rodriguez responded, "Not today, we need to give them [Mexicans] their day today," or words to that effect.

27.     While Plaintiff Dianna Dariano was with Defendant Rodriguez, other parents, including Plaintiffs Julie Ann Fagerstrom and Joy Jones, arrived at the office. The parents requested an immediate meeting with the principal, Defendant Boden.

28.     The meeting with Defendant Boden took place moments later in a nearby conference room. During this meeting, Defendants Boden and Rodriguez again began lecturing to the parents about the meaning of "Cinco de Mayo," and Defendant Boden affirmed the order that Student Plaintiffs were required to remove or turn their pro-U.S.A. shirts inside out. At one

7

**Complaint**

point, Defendant Boden expressed his anger at Student Plaintiffs' pro-U.S.A. shirts and slammed his fist on the table, stating that it was inappropriate for these students to wear these shirts to school on "Cinco de Mayo" and that they could wear their American flag shirts "any day but that day."

29.     Because Plaintiff M.D. and two of the other boys were wearing "Tap Out" t-shirts and not ones conveying a purely pro-U.S.A. message, like the shirts worn by Plaintiffs D.M. and D.G., Defendant Boden, over the objection of Defendant Rodriquez, lifted Defendant Rodri-quez's ban on these shirts based on the demand by one parent that these boys be allowed to re-turn to class.  The parent pointed out that their sons had worn the "Tap Out" shirts as well as the American flag shirts in the past without objection.  At this point, the boys had been in the office for approximately an hour and a half.

30.     Defendants Boden and Rodriquez, however, did not lift the ban with regard to the shirts worn by Plaintiffs D.M. and D.G., and again gave them the ultimatum of turning their pro-U.S.A. shirts inside out or being suspended from school.  Not wanting to disrespect their country and its flag, Plaintiffs D.M. and D.G. refused to comply with this order, so they were directed to leave the school with their parents.

31.     Shortly after her son was allowed to return to class with his "Tap Out" shirt and after learning that Defendants were permitting students to express a pro-Mexico viewpoint through message-bearing t-shirts, body paint, the display of Mexican flags, music, and dance, Plaintiff Dianna Dariano removed her son.  Plaintiff Dianna Dariano believed that her son was unfairly singled out by Defendants for adverse treatment on account of his pro-U.S.A. viewpoint and did not want him to remain in school that day.

8

**Complaint**

32.   On May 5, 2010, School District officials, including Defendants Boden and Rodriguez, approved, supported, and endorsed pro-Mexico messages expressed by students at Live Oak High School, but censored pro-U.S.A. messages, specifically including the pro-U.S.A. message and viewpoint conveyed by Student Plaintiffs.

33.   Defendants' censorship of Student Plaintiffs' pro-U.S.A. message was pursuant to School District policy, which states, "Clothing . . . or actions which . . . disrupt school activities will not be tolerated.  Such actions or the wearing and/or possession of these items may be cause for suspension."

34.   Defendants' censorship of Student Plaintiffs' pro-U.S.A. message was made pursuant to School District policy even though Student Plaintiffs' shirts and the message they conveyed caused no disruption to the school environment, let alone a disruption that was material or substantial.  In fact, on May 5, 2010, no classes were disrupted or cancelled at Live Oak High School, and the school's schedule proceeded as normal.

35.   The challenged School District policy provides school officials, such as Defendants Boden and Rodriguez, with no objective standards or guidelines to enforce its provisions, thereby granting government officials unbridled discretion to silence messages and viewpoints, such as the message and viewpoint expressed by Student Plaintiffs, that the government officials dislike.

36.   The challenged School District policy permits school officials, such as Defendants Boden and Rodriguez, to engage in a prior restraint of student speech by prohibiting students from wearing message-bearing clothing without any objective evidence that the speech caused or will cause substantial or material disruption to the school environment.

9

**Complaint**

37.     The challenged School District policy was the moving force behind the unconstitutional acts committed by Defendants Boden and Rodriguez as set forth in this Complaint.

## FIRST CLAIM FOR RELIEF

### (Violation of Freedom of Speech under the First Amendment)

38.     Plaintiffs hereby incorporate by reference all stated paragraphs.

39.     By reason of the aforementioned policy, practice, custom, acts, and omissions, engaged in under color of state law, Defendants have imposed a content- and viewpoint- based restrictions on Plaintiffs' speech in violation of the Free Speech Clause of the First Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

40.     By reason of the aforementioned policy, practice, custom, acts, and omissions, engaged in under color of state law, Defendants have imposed a prior restraint on Plaintiffs' speech in violation of the Free Speech Clause of the First Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

41.     Defendants' policy restricting Plaintiffs' speech is overbroad in violation of the Free Speech Clause of the First Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

42.     As a direct and proximate result of Defendants' violation of the Free Speech Clause of the First Amendment, Plaintiffs have suffered irreparable harm, including the loss of their constitutional rights, entitling them to declaratory and injunctive relief and nominal damages.

10

**Complaint**

### SECOND CLAIM FOR RELIEF

### (Violation of Due Process Under the Fourteenth Amendment)

43.     Plaintiffs hereby incorporate by reference all stated paragraphs.

44.     By reason of the aforementioned policy, practice, custom, acts, and omissions, engaged in under color of state law, Defendants have violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983, in that Defendants' policy restricting Plaintiffs' speech is unconstitutionally vague.

45.     As a direct and proximate result of Defendants' violation of the Due Process Clause of the Fourteenth Amendment, Plaintiffs have suffered irreparable harm, including the loss of their constitutional rights, entitling them to declaratory and injunctive relief and nominal damages.

### THIRD CLAIM FOR RELIEF

### (Violation of Equal Protection Under the Fourteenth Amendment)

46.     Plaintiffs hereby incorporate by reference all stated paragraphs.

47.     By reason of the aforementioned policy, practice, custom, acts, and omissions, engaged in under color of state law, Defendants have unconstitutionally deprived Plaintiffs of the equal protection of the law guaranteed under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983, in that Defendants, through their acts, policies, practices, procedures, and/or customs, prevented Plaintiffs from expressing a message based on its content and/or viewpoint, thereby denying the use of a forum to those whose views Defendants find unacceptable.

11

**Complaint**

48.     As a direct and proximate result of Defendants' violation of the Equal Protection Clause of the Fourteenth Amendment, Plaintiffs have suffered irreparable harm, including the loss of their constitutional rights, entitling them to declaratory and injunctive relief and nominal damages.

### FOURTH CLAIM FOR RELIEF

### (Violation of Freedom of Speech under the California Constitution)

49.     Plaintiffs hereby incorporate by reference all stated paragraphs.

50.     By reason of the aforementioned policy, practice, custom, acts, and omissions, engaged in under color of state law, Defendants have imposed a content- and viewpoint-based restriction on Plaintiffs' speech in violation of Article I, § 2 of the California Constitution.

51.     As a direct and proximate result of Defendants' violation of the Liberty of Speech Clause of the California Constitution, Plaintiffs have suffered irreparable harm, including the loss of their constitutional right to freedom of expression, entitling them to declaratory and injunctive relief and nominal damages.

### CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

52.     Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

**WHEREFORE,** Plaintiffs ask this Court:

A)     to declare that Defendants have violated the First and Fourteenth Amendments to the United States Constitution, as set forth in this Complaint;

B)     to declare that Defendants have violated the California Constitution, as set forth in this Complaint;

12

Complaint

C)   to permanently enjoin Defendants' policy, practice, procedure, and/or custom of banning pro-U.S.A. messages and viewpoints, as set forth in this Complaint;

D)   to award Plaintiffs nominal damages against Defendants in their individual capacities for violating their constitutional rights pursuant to 42 U.S.C. § 1983 and other applicable law;

E)   to award Plaintiffs their reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988, California Code of Civil Procedure § 1021.5, and other applicable law;

F)   to grant such other and further relief as this Court should find just and proper.

Respectfully submitted this **23** day of June 2010.

**THE BECKER LAW FIRM**

By:

William J. Becker, Jr., Esq.
*Affiliate attorney of The Rutherford Institute and the Thomas More Law Center*

**THOMAS MORE LAW CENTER**

Robert J. Muise, Esq.*
*Subject to admission *pro hac vice*

*Co-Counsel for Plaintiffs John Dariano, Dianna Dariano, M. D., Kurt Fagerstrom, Julie Ann Fagerstrom, D.M., Kendall Jones, Joy Jones, and D.G.*

13

**Complaint**