IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Dianna Dariano, et al., | NO. C 10-02745 JW |
| Plaintiffs, <br> v. | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| Morgan Hill Unified Sch. Dist., et al., | |
| Defendants. | |

## I. INTRODUCTION

Plaintiffs[1] bring this action against Morgan Hill Unified School District ("Morgan Hill") and certain individuals[2] (collectively, "Defendants"), alleging violations of their First and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983, and violations of their right to Freedom of Expression under the California Constitution, Art I., § 2. Plaintiffs allege that Defendants violated their federal and state constitutional rights to freedom of expression, due process, and equal

---

[1] Dianna Dariano and John Dariano on behalf of their minor child M.D., Julie Ann Fagerstrom and Kurt Fagerstrom on behalf of their minor child D.M., and Kendall Jones and Joy Jones on behalf of their minor child D.G.

[2] Individual Defendants are Nick Boden ("Boden") in his official and individual capacity as Principal of Live Oak High School, and Miguel Rodriguez ("Rodriguez") in his official and individual capacity as Assistant Principal of Live Oak High School.
    Defendants Rodriguez and Boden have both left the Morgan Hill Unified School District since this action was filed. (See Docket Item No. 12–2.) Pursuant to Fed. R. Civ. P. 25(d), their successors in office are automatically named as defendants in the suit in their official capacity. In addition, on September 19, 2011, the Court received notice that Defendant Boden has filed for bankruptcy. (See Docket Item No. 64.) Accordingly, all proceedings against Defendant Boden are stayed as a matter of law. See 11 U.S.C. § 362(a).

protection by disallowing them from wearing American flag shirts in a public high school on Cinco de Mayo Day.

Presently before the Court are: (1) Defendants' Motion for Summary Judgment as to all claims;[3] and (2) Plaintiffs' Motion for Summary Judgment as to all claims.[4] The Court conducted a hearing on October 3, 2011. Based on the papers submitted to date and oral argument, the Court GRANTS Defendants' Motion and DENIES Plaintiffs' Motion for Summary Judgment.

## II. BACKGROUND

A detailed description of the allegations in this case can be found in the Court's February 17, 2011 Order.[5] The Court reviews the undisputed facts and procedural history relevant to resolving these Motions.

### A. **Undisputed Facts**

Plaintiffs are three students who attended Live Oak High School at the time the events at issue occurred.[6] Live Oak High School ("Live Oak") is a high school within the Morgan Hill Unified School District, a public school district in the state of California.[7] On May 5, 2010, Plaintiffs and two other students wore clothing including images of the American flag to school at Live Oak. (Answer ¶ 14.) Defendant Rodriguez was an assistant principal at Live Oak on that date. (Id. ¶ 13.) During "brunch break," which occurs between 10:00 a.m. and 10:15 a.m. every day, Defendant Rodriguez asked Plaintiffs to either remove their shirts or turn them inside out. (Complaint ¶¶ 18-20; Answer ¶ 20.) When Plaintiffs refused to comply with this request, Defendant

---

[3] (Defendants' Notice of Motion and Motion for Summary Judgment; Memorandum of Points and Authorities in Support Thereof, hereafter, "Defendants' Motion," Docket Item No. 53.)

[4] (Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Summary Judgment, hereafter, "Plaintiffs' Motion," Docket Item No. 52.)

[5] (Order Granting in part and Denying in part Defendants' Motion to Dismiss, hereafter, "February 17 Order," Docket Item No. 36.)

[6] (Defendants' Answer to Plaintiffs' Complaint ¶¶ 8-10, hereafter, "Answer," Docket Item No. 37.)

[7] (Complaint ¶ 11.)

Rodriguez asked Plaintiffs to come to his office. (Answer ¶ 20.) Plaintiffs complied with this request. (Id. ¶ 23.)

Shortly thereafter Dianna Dariano, the mother of Plaintiff M.D., arrived at the school office. (Answer ¶ 26.) Immediately thereafter, Defendant Boden met with Plaintiffs and the two other students in a conference room in the school's office. (Id. ¶ 28.) The students remained in the office for approximately ninety minutes. (Id. ¶ 29.) Over the course of the meeting, Defendant Boden let two of the five students, including Plaintiff M.D., return to class without changing their shirts. (Complaint ¶¶ 29-30; Answer ¶ 29.) These two students were wearing "Tap Out" shirts. (Id.) Defendant Boden told Plaintiffs D.M. and D.G. that they had to either turn their shirts inside out or go home for the day. (Answer ¶ 30.) He told them that if they chose to go home for the day, they would receive excused absences and it would not count against their attendance record. (Id.) Both Plaintiffs left school at that time. (Complaint ¶ 30.) Although Plaintiff M.D. had been allowed to return to class, Dianna Dariano removed her son from school for the rest of that day. (Answer ¶ 31.)

## B. Procedural History

Plaintiffs filed their Complaint on June 23, 2010.[8] Defendants moved to dismiss for lack of subject matter jurisdiction on the grounds that: (1) the case was moot because the individual Defendants were no longer employed by the District; (2) Plaintiffs' claims for nominal damages were barred by sovereign immunity; (3) Plaintiff M.D. suffered no injury in fact because he was allowed to return to class without changing his clothes; and (4) none of the named parents had standing to sue on their own behalf as they had not suffered injury.[9] The Court granted Defendants' Motion with respect to the parents, holding that the parents lacked standing to bring the suit. (See February 17 Order at 14-15.) The Court denied Defendants' Motion in all other respects. (Id.) Defendants then filed their Answer to Plaintiffs' Complaint, asserting sovereign immunity as to all

---

[8] (See Docket Item No. 1.)

[9] (See Notice of Defendants' Motion and Motion to Dismiss for Lack of Subject Matter Jurisdiction, Docket Item No. 12.)

3

claims against Defendant Morgan Hill and qualified immunity for Defendants Boden and Rodriguez. (Answer at 8-9.)

Presently before the Court are the parties' Cross-Motions for Summary Judgment.

### III. STANDARDS

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." Celotex v. Catrett, 477 U.S. 317, 323-24 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying the evidence which it believes demonstrates the absence of a genuine issue of material fact." Id. at 323. The non-moving party must then identify specific facts "that might affect the outcome of the suit under the governing law," thus establishing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e).

When evaluating a motion for summary judgment, the court views the evidence through the prism of the evidentiary standard of proof that would pertain at trial. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986). The court draws all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight that particular evidence is accorded. See, e.g., Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1992). The court determines whether the non-moving party's "specific facts," coupled with disputed background or contextual facts, are such that a reasonable jury might return a verdict for the non-moving party. T.W. Elec. Serv. v. Pac. Elec. Contractors, 809 F.2d 626, 631 (9th Cir. 1987). In such a case, summary judgment is inappropriate. Anderson, 477 U.S. at 248. However, where a rational trier of fact could not find for the non-moving party based on the record as a whole, there is no "genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

Although the district court has discretion to consider materials in the court file not referenced in the opposing papers, it need not do so. See Carmen v. San Francisco Unified Sch. Dist., 237 F.3d

4

1026, 1028-29 (9th Cir. 2001). "The district court need not examine the entire file for evidence establishing a genuine issue of fact." Id. at 1031. However, when the parties file cross-motions for summary judgment, the district court must consider all of the evidence submitted in support of both motions to evaluate whether a genuine issue of material fact exists precluding summary judgment for either party. Fair Housing Council of Riverside Cnty, Inc. v. Riverside Two, 249 F.3d 1132, 1135 (9th Cir. 2001).

## IV. DISCUSSION

Defendants move for summary judgment on the grounds that: (1) All claims against Defendant Morgan Hill are barred by the Eleventh Amendment; (2) Plaintiffs' cause of action for free speech violations fails because school administrators reasonably forecast that Plaintiffs' clothing would cause a substantial disruption at school; (3) Plaintiffs' equal protection claim fails because Plaintiffs have not offered any evidence that they were discriminated against; and (4) Plaintiffs' cause of action for violation of due process fails because as a matter of law Defendant Morgan Hill's dress code policy provides adequate notice to students of what attire is prohibited. (Defendants' Motion at 1-2.) Defendants further contend that none of the actions of Defendant Rodriguez violated law which was clearly established at the time, entitling Defendant Rodriguez to qualified immunity. (Id.)

Plaintiffs counter that they must prevail on all claims as a matter of law because: (1) Plaintiffs' attire did not cause any disruption of school activities, rendering its suppression a violation of the First Amendment;[10] (2) Plaintiffs were denied the equal protection of the law because undisputed evidence demonstrates that they were treated differently than students wearing Mexican flags and flag colors;[11] and (3) the undisputed evidence shows that Defendant Morgan Hill provides no guidelines for administrators in determining when clothing is disruptive, rendering Defendant Morgan Hill's dress code policy unconstitutionally vague in violation of their right to due

---

[10] (See Plaintiffs' Motion at 11.)

[11] (See Plaintiffs' Motion at 15.)

5

1 process. (Id. at 19.) Plaintiffs also contend that their claims against Morgan Hill and Defendant

2 Rodriguez are not barred by sovereign immunity because monetary damages are sought only against

3 the school administrators in their individual capacities, and not against the state itself.[12]

### A.     **Eleventh Amendment Immunity**

At issue is whether Plaintiffs' claims against Defendant Morgan Hill are barred by Eleventh Amendment sovereign immunity.

The Eleventh Amendment bars private citizens from bringing suit against a state in federal court. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). States are immune from suit in federal court regardless of the nature of either the relief sought or the cause of action. Id. at 100-02. In addition, sovereign immunity bars suit when either the state itself or an agency of the state is named as the defendant. See Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997). The Ninth Circuit has consistently held that in California, because of the manner in which funds are dispersed to school districts by the state, school districts are agencies of the state for sovereign immunity purposes. See Belanger v. Madera Unified Sch. Dist., 963 F.2d 248, 251 (9th Cir. 1992). Thus, school districts in California are immune to suit even for relief that is solely prospective. See Rounds v. Or. State Bd. of Higher Educ., 166 F.3d 1032, 1035-36 (9th Cir. 1999).

Here, the parties do not dispute that Defendant Morgan Hill is a public school district operating within the state of California.[13] As such, under Belanger, the district is an agent of the state, which means that the Court lacks jurisdiction to hear Plaintiffs' claims against it.

Plaintiffs contend that their claims against Morgan Hill are not barred byسovereign immunity because they seek only prospective relief, and Ex Parte Young[14] created "an exception to Eleventh

---

[12] (Plaintiffs' Reply in Support of Motion for Summary Judgment at 11-12, hereafter, "Plaintiffs' Reply," Docket Item No. 63.)

[13] (See Complaint ¶ 11.)

[14] 209 U.S. 123 (1908).

6

Amendment immunity" for prospective relief.[15] While Ex Parte Young does allow suits to proceed against state *officials* in their official capacity for purely prospective relief, it does not allow federal courts to entertain suits against the state itself, regardless of the form of relief sought. See Rounds, 166 F.3d at 1035-36 (discussing Ex Parte Young). Here, Plaintiffs have named a state entity, Morgan Hill Unified School District, as a Defendant. However, because Ex Parte Young only enables suit against state officials, it does not permit Plaintiffs to sue Morgan Hill.

Accordingly, the Court DISMISSES all claims against Defendant Morgan Hill.[16]

**B.     First Amendment Claim**

At issue is whether the school officials violated Plaintiffs' First Amendment rights.

Courts have long struggled to balance the First Amendment rights of students with the need of school administrators to maintain a safe and educational environment in our nation's schools. See Morse v. Frederick, 551 U.S. 393, 403-08 (2007) (reviewing cases); LaVine v. Blaine Sch. Dist., 257 F.3d 981, 987-90 (9th Cir. 2001). Though Tinker v. Des Moines made clear that students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate,"[17] the Supreme Court has also consistently recognized that these rights are not co-extensive with those of adults or even of children outside of a public school setting.[18]

Student speech which is not obscene, and which does not bear the imprimatur of the school, is governed by the standard set forth in Tinker.[19] This standard allows officials to suppress speech only on the basis of "facts which might have reasonably have led school authorities to forecast substantial disruption of or material interference with school activities." Tinker, 393 U.S. at 514.

---

[15] (See Plaintiffs' Opposition to Defendants' Motion for Summary Judgment at 22-23, hereafter, "Plaintiffs' Opp'n," Docket Item No. 59.)

[16] Dismissal for lack of subject matter jurisdiction is not a ruling on the merits of a plaintiff's claim and is therefore a dismissal without prejudice. Haywood v. Drown, 129 S. Ct. 2108, 2134 (2009).

[17] 393 U.S. 503, 506 (1969).

[18] See, e.g., Morse, 551 U.S. at 396-97.

[19] See Chandler v. McMinnville Sch. Dist., 978 F.2d 524, 529 (9th Cir. 1992).

7

The Ninth Circuit has noted that while simple in theory, this standard is difficult to apply across the myriad possible disruptive situations faced by school administrators. See Karp v. Becken, 477 F.2d 171, 174 (9th Cir. 1973). For that reason, in determining whether the Tinker standard has been satisfied, courts must look to "the totality of the relevant facts" present in every case. LaVine, 257 F.3d at 989. Karp, however, provides useful guidance as to what constitutes an adequate factual basis for believing a disruption will occur.

First, in Karp, the Ninth Circuit clarified that Tinker does not require that school officials wait until disruption occurs before they act. 477 F.2d at 175. To the contrary, school officials generally have a duty to prevent such occurrences when possible. Id. Second, Tinker "does not demand a certainty that disruption will occur, but rather the existence of facts which might reasonably lead school officials to forecast substantial disruption." Id. Third, in evaluating the adequacy of an official's justification for suppression, "the level of disturbance required to justify official intervention is relatively lower in a public school than it might be on a street corner." Id. Finally, school officials may be justified in suppressing speech on campus in order to prevent a disturbance even if punishing a student for that same speech would not pass constitutional muster. See id. at 176-77; see also LaVine, 257 F.3d at 992 (upholding emergency expulsion of student based on concerns for student safety but enjoining school from placing "negative documentation" in student's permanent file).

The Ninth Circuit has not directly confronted the question of when a perceived threat of violence by other students against a student speaker may justify the suppression of that student's speech. Those circuits to confront the question, however, have demonstrated broad deference to the decisions of school administrators with regards to student safety. The Sixth, Tenth and Eleventh Circuits have all upheld bans on the Confederate flag in schools with a history of racial tensions leading to disturbances.[20] Similarly, the Second Circuit, in considering the propriety of suspending a

---

[20] See Barr v. Lafon, 538 F.3d 554, 565-70 (6th Cir. 2008) (applying Tinker standard and upholding prohibition on wearing Confederate flag); Scott v. Sch. Bd. of Alachua Cnty., 324 F.3d 1246, 1249 (11th Cir. 2003) (holding that ban on Confederate flag satisfied Tinker standard), cert.

student after his comments led to multiple threats of violence against him, explained that "while Tinker was not entirely clear as to what constitutes 'substantial interference,' violence or the threat of violence would undoubtedly qualify." DeFabio v. East Hampton Union Free Sch. Dist., 623 F.3d 71, 79 (2d Cir. 2010) (citation omitted). Recognizing the critical importance of maintaining a safe environment, courts consistently review "with deference . . . schools' decisions in connection with the safety of their students even when freedom of expression is involved." LaVine, 257 F.3d at 992.

In this case, the following undisputed evidence is before the Court:

(1) In the six years that Defendant Boden was principal at Live Oak, he personally observed at least thirty fights on campus.[21] Some of these fights involved gangs, and others were between Caucasian and Hispanic students. (Id.) A police officer is present on campus every day to ensure safety on school grounds.[22]

(2) On Cinco de Mayo in 2009, a verbal exchange and altercation arose between a group of predominantly white and a group of Mexican students.[23] This altercation involved an exchange of profanities and threats were made. (Id.) A makeshift American flag was put on one of the trees on campus. (Id.) A group of Caucasian students began clapping and chanting "USA" as this flag went up. (Id.) This was in response to a group of Mexican students walking around with the Mexican flag. One Mexican student shouted "fuck them white boys, fuck them white boys." (Id.) Vice-Principal Rodriguez directed the minor to stop using such profanity. (Id.) The minor responded by saying "But Rodriguez, they are racist. They are being racist. Fuck them white boys. Let's fuck them up." (Id.) Vice-Principal Rodriguez removed the minor from the area. (Id.)

(3) When Plaintiff M.D. wore an American flag shirt to school on Cinco de Mayo 2009, he was approached by a male student who shoved a Mexican flag at him and said something in Spanish expressing anger at Plaintiffs' clothing.[24]

---

denied, 540 U.S. 824; West v. Derby Unified Sch. Dist. No. 260, 206 F.3d 1358, 1365-67 (10th Cir. 2000) (upholding ban on Confederate flags under Tinker).

[21] (Declaration of Nicholas Boden in Support of Defendants' Motion for Summary Judgment ¶ 5, hereafter, "Boden Decl.," Docket Item No. 54.)

[22] (Declaration of Alyson Cabrera in Support of Defendants' Motion for Summary Judgment, hereafter, "Cabrera Decl.," Ex. G, Deposition of Dominic Maciel at 57:11-57:17, hereafter, "Maciel Depo.," Docket Item No. 55-3; Cabrera Decl., Ex. F, Deposition of Daniel Galli at 36:18-36:24, hereafter, "Galli Depo.," Docket Item No 55-3.)

[23] (Cabrera Decl., Ex. B, Deposition of Miguel Rodriguez at 65:17-86:6, hereafter, "Rodriguez Depo.," Docket Item No. 55-1.)

[24] (Cabrera Decl., Ex. E, Deposition of Matthew Dariano at 83:15-83:20, hereafter, "Dariano Depo.," Docket Item No. 55-2.)

9

  (4)  Many of the students involved in the May 2009 altercation were still students at Live Oak in May of 2010. (Rodriguez Depo. at 92:8-92:12.)

  (5)  On the morning of Cinco de Mayo 2010, a female student approached Plaintiff M.D., motioned to his shirt, and said "why are you wearing that, do you not like Mexicans?" (Dariano Depo. at 68:25-69:7.) Plaintiffs D.G. and D.M. were also confronted about their clothing by female students before brunch break.[25]

  (6)  As Defendant Rodriguez was leaving his office before brunch break on May 5, 2010, a Caucasian student approached him and said, "You may want to go out to the quad area. There might be some–there might be some issues." (Rodriguez Depo. at 46:20-46:25.)

  (7)  During brunch break on May 5, 2010, another student called Vice-Principal Rodriguez over to a group of Mexican students and said that she was concerned about a group of students wearing the American flag and said that "there might be problems."[26] Vice-Principal Rodriguez took her statement to mean that there might be some sort of physical altercation. (Id. at 60:13-60:15.) A group of Mexican students also asked Defendant Rodriguez "why do they get to wear their flag when we don't get to wear our flag?" (Id. at 57:1-57:3.)

  (8)  Defendant Rodriguez was directed by Defendant Boden to have the students either turn their shirts inside out or take them off. (Rodriguez Depo. at 76:23-77:5.) Plaintiffs refused to do so. (Id. at 79:1-79:4.)

  (9)  While meeting with Plaintiffs about their attire, Defendant Rodriguez explained that he was concerned for their safety. (Rodriguez Depo. at 108:5-108:14.) Plaintiffs did not dispute that their attire put them at risk of violence. (Id.) Plaintiff D.M. stated that he was "willing to take on that responsibility" in order to continue wearing his shirt. (Id.)

  (10)  Following Plaintiffs' departure from school they received numerous threats from other students. Plaintiff D.G. received a threat of violence via text message on May 6th.[27] He received another threatening call from a male saying he was outside of D.G.'s home that same night. (Id.) Plaintiffs D.M. and M.D. also were threatened with violence. (Id. at 90:15-91:3.) A student at Live Oak overheard a group of male students saying that some gang members would come down from San Jose to "take care of" Plaintiffs. (Id. at 84:2-84:5.) Based on these threats, Plaintiffs did not go to school on May 7. (Id. at 85:1.)

Although Plaintiffs do not dispute that any of these incidents occurred, Plaintiffs contend that as a matter of law, the events prior to the school officials' intervention do not constitute a sufficient basis to forecast a substantial disruption with school activities. In support of this contention,

---

[25] (Maciel Depo. at 127:18-128:5; Galli Depo. at 101:22-102:7.)

[26] (Rodriguez Depo. at 60:4-60:8.)

[27] (Cabrera Decl., Ex. I, Deposition of Joy Jones at 82:11-85:1, hereafter, "Jones Depo.," Docket Item No. 55-3.)

10

1  Plaintiffs emphasize the facts, also undisputed, that no classes were delayed or interrupted by
2  Plaintiffs' attire,[28] no incidents of violence occurred on campus that day,[29] and prior to asking
3  Plaintiffs to change Defendant Rodriguez had heard no reports of actual disturbances being caused
4  in relation to Plaintiffs' apparel.[30]

5  Upon review, the Court finds that based on these undisputed facts, the school officials
6  reasonably forecast that Plaintiffs' clothing could cause a substantial disruption with school
7  activities, and therefore did not violate the standard set forth in Tinker by requiring that Plaintiffs
8  change. In contrast to Tinker, in which the Supreme Court specifically noted that no threats of
9  violence were made,[31] here Defendant Rodriguez was warned by two different students that they
10 were concerned that Plaintiffs' clothing would lead to violence. These warnings were made in a
11 context of ongoing racial tension and gang violence within the school, and after a near-violent
12 altercation had erupted during the prior Cinco de Mayo over the display of an American flag. While
13 Plaintiffs are correct that no actual violence had erupted prior to the school officials' intervention,
14 Tinker unequivocally did not establish an "actual disruption" standard.[32] To require the school
15 officials to ignore warnings of violence until they reached fruition would, as the Sixth Circuit noted,
16 place school officials "between the proverbial rock and hard place: either they allow disruption to
17 occur, or they are guilty of a constitutional violation."[33] Although no school official can predict with
18 certainty which threats are empty and which will lead to true violence, the Court finds that these

---

[28] (Declaration of William J. Becker Jr., in Support of Plaintiffs' Motion for Summary Judgment, hereafter, "Becker Decl.," Ex. 1, Deposition of Miguel Rodriguez at 44:5-44:19, hereafter, "Rodriguez Depo. 2," Docket Item No. 52-1.)

[29] (Becker Decl., Ex. 4, Deposition of Nicholas Boden at 59:19-59:21, hereafter, "Boden Depo.," Docket Item No. 52-1.)

[30] (Rodriguez Depo. 2 at 44:15-44:19.)

[31] 393 U.S. at 508.

[32] See Karp, 477 F.2d at 175.

[33] Barr, 538 F.3d at 565 (citation omitted).

11

1 school officials were not unreasonable in forecasting that Plaintiffs' clothing exposed them to
2 significant danger. Because the school officials were responsible for the safety of Plaintiffs on a
3 day-to-day basis, the Court finds that they did not violate the First Amendment by asking Plaintiffs
4 to turn their shirts inside out to avoid physical harm.

5 Accordingly, the Court GRANTS Defendants' Motion as to Plaintiffs' First Cause of Action
6 against Defendant Rodriguez.

7 **C.    Equal Protection Claim**

8 At issue is whether Plaintiffs' right to equal protection was violated by the requirement that
9 they change clothing. Plaintiffs contend that they are entitled to summary judgment because the
10 undisputed evidence shows that they were treated differently than students wearing the colors of the
11 Mexican flag, and that this distinction was based on the unpopularity of their viewpoint. (Plaintiffs'
12 Motion at 18.) Defendants respond that Plaintiffs have offered no evidence demonstrating that
13 students wearing the colors of the Mexican flag were likely to be targeted for violence, and that
14 officials treated all students for whose safety they feared in the same manner. (Defendants' Motion
15 at 20.)

16 When the government infringes upon protected speech in a discriminatory manner, such
17 conduct may constitute a violation of the Equal Protection Clause as well as the First Amendment.
18 See Police Dept. of the City of Chicago v. Mosley, 408 U.S. 92, 96 (1972). "[U]nder the Equal
19 Protection Clause, not to mention the First Amendment itself, government may not grant the use of a
20 forum to people whose views it finds acceptable, but deny it those wishing to express less favored or
21 more controversial views." Id.

22 Here, for the reasons discussed above, Defendants have provided a non-discriminatory basis
23 for asking Plaintiffs to remove their American flag attire. Defendants have put forth significant
24 evidence demonstrating that Plaintiffs were asked to change clothes in order to protect their own
25 safety. Plaintiffs have not offered any evidence demonstrating that students wearing the colors of
26 the Mexican flag were targeted for violence. To the contrary, the undisputed evidence shows that
27 Plaintiffs were the only students on campus whose safety was threatened that day, at least to the
28

12

knowledge of Defendants.[34] In addition, Defendant Rodriguez has testified that he did not see any students wearing the Mexican flag on their clothing during the day. (Rodriguez Depo. 2 at 117:17-117:22.) He also testified that he did not see any students with Mexican flags displayed on their person until he saw photos in the newspaper in the days following Cinco de Mayo. (Id. at 117:2-117:11.) Plaintiffs offer no evidence to contradict Defendant Rodriguez's testimony in this regard.

In sum, the school officials have offered substantial evidence that all students whose safety was in jeopardy were treated equally. Plaintiffs offer no evidence to the contrary. Absent any evidence that the school officials treated students differently based on the content of the message they displayed, as opposed to concerns for their safety, the Court finds that the school officials are entitled to judgment as a matter of law.[35]

Accordingly, the Court GRANTS Defendants' Motion as to Plaintiffs' Third Cause of Action against Defendant Rodriguez.

**D.     Due Process Claim**

In addition to seeking relief from Defendant Rodriguez in his individual capacity, Plaintiffs seek to permanently enjoin the use of the school district's dress code policy,[36] which Plaintiffs contend is unconstitutionally vague and thus violates the Due Process Clause.[37] Although all claims against Defendant Morgan Hill have been dismissed, the constitutionality of its dress code policy is

---

[34] (Boden Depo. at 59:19-59:21.)

[35] Plaintiffs contend that statements made by school officials, during their meeting with Plaintiffs, demonstrate that those officials only required Plaintiffs to change their clothes in order to avoid offending other students at the school. However, upon review, the Court finds that Plaintiffs mischaracterize the statements at issue. The Court finds that those statements, when read in context, indicate that Defendants were apprehensive about causing "offense" to other students in relation to Defendants' concerns about Plaintiffs' safety. (See, e.g., Rodriguez Depo. 2 at 89:23-91:12; Boden Depo. at 49:20-51:7.)

[36] (See Becker Decl., Ex. 8, Excerpts from Student Rights and Responsibilities Handbook, Docket Item No. 52-1.)

[37] Specifically, Plaintiffs contend that the dress code is unconstitutionally vague because of its prohibition on clothing which "disrupts school activities," arguing that this rule "provides no objective standards," thereby "granting government officials unbridled discretion to silence messages and viewpoints." (Plaintiffs' Motion at 19-20.)

1 nonetheless properly before the Court because Defendant Rodriguez has been named in his official,
2 as well as individual capacity. As stated earlier, because Defendant Rodriguez's successor will be in
3 a position to enforce the allegedly unconstitutional policy, suit against him for prospective relief is
4 proper.[38] Defendants do not dispute that the policy is their operative dress code and that Defendant
5 Morgan Hill does not have any additional guidelines on which administrators are supposed to rely in
6 administering the code.[39] Defendants contend, however, that the policy provides adequate guidance
7 to school officials under the diminished standards applicable to school disciplinary codes.
8 (Defendants' Motion at 18.)

9 The Supreme Court has made clear that while students may challenge a school disciplinary
10 policy for vagueness, the standards that apply to school disciplinary codes are vastly different than
11 those governing criminal statutes. This is because of "the school's need to be able to impose
12 disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational
13 process," which means that "the school disciplinary rules need not be as detailed as a criminal
14 code." Bethel Sch. Dist. No. 403 v. Fraser, 478 U.S. 675, 686 (1986). Thus, "maintaining security
15 and order in the schools requires a certain degree of flexibility in school disciplinary procedures."
16 Id. (citation omitted). Because of this need for flexibility, the Fraser Court found that the due
17 process claim of a student who had been suspended on the basis of a policy forbidding "obscene"
18 speech, when his speech was not legally obscene but merely overly lewd for a school setting, was
19 "wholly without merit." Id.

20 Here, the Court finds that the policy at issue does not violate the Due Process clause for lack
21 of clarity. To the contrary, the disciplinary standard is no more vague than that at issue in Fraser, or

---

[38] See Long v. Van de Kamp, 961 F.2d 151, 152 (9th Cir. 1992) (explaining that prospective relief may be sought against a state official if that official has a sufficient connection to the challenged statute or provision).

[39] (Becker Decl., Ex. 5, Deposition of Wesley Smith at 19:21-25:13, Docket Item No. 52-1.)

14

1 than dress codes across the country that have been upheld against vagueness challenges.[40] Plaintiffs
2 do not cite to a single instance, in this circuit or any other, of a school dress code's ban on disruptive
3 conduct or apparel being held overly vague, and the Court is aware of none. Thus, the Court finds
4 that Plaintiffs' argument is precluded by Fraser and that the District's policy does not violate
5 Plaintiffs' right to due process.

6 Accordingly, the Court GRANTS Defendants' Motion as to Plaintiffs' Second Cause of
7 Action.

**E. State Constitutional Claim**

9 At issue is whether Plaintiffs' rights to freedom of speech and expression under Article 1, §
10 2(a) of the California State Constitution were violated by the requirement that they change clothes.

11 Article 1, § 2(a) of the California Constitution is more protective of speech than the First
12 Amendment in some contexts.[41] In the context of schools, however, California courts have generally
13 treated the rights of students and teachers under Article 1, § 2(a) as being co-extensive with those
14 provided by the First Amendment.[42]

15 Here, Plaintiffs concede that their Article 1, § 2(a) claim is dependant upon the Court finding
16 a violation of the Tinker standard. (Plaintiffs' Opp'n at 18.) Having found that the school officials'
17 conduct satisfied the Tinker standard and did not violate the First Amendment, the Court similarly
18 finds that their conduct did not violate Article 1, § 2(a) of the California Constitution.

19 Accordingly, the Court GRANTS Defendants' Motion as to Plaintiffs' Fourth Cause of
20 Action.

---

[40] See, e.g., A.M. ex rel. McAllum v. Cash, 585 F.3d 214, 224 (5th Cir. 2009) (upholding against due process challenge school dress code's prohibition on clothing with "inappropriate symbolism"); Jackson v. Dorrier, 424 F.2d 213, 214, 215 (6th Cir. 1970) (upholding dress code's prohibition on attire that is a "disturbing influence").

[41] See Robins v. Pruneyard Shopping Ctr., 23 Cal. 3d. 899, 908 (1979).

[42] See, e.g., Cal. Teachers Ass'n v. Governing Bd. of San Diego United Sch. Dist., 45 Cal. App. 4th 1383, 1391-92 (Cal. Ct. App. 1996).

15

## V. CONCLUSION

The Court DENIES Plaintiffs' Motion for Summary Judgment and GRANTS Defendants' Motion for Summary Judgment as follows:

(1) The Court DISMISSES all claims against Defendant Morgan Hill for lack of subject matter jurisdiction based on sovereign immunity.

(2) The Court GRANTS Defendant Rodriguez's Motion for Summary Judgment on all claims.

(3) In light of the automatic stay as to Defendant Boden, pursuant to Rule 54(b), the Court finds that there is no just reason to delay entry of Judgment as to Defendant Rodriquez. See Fed. R. Civ. P. 54(b). Judgment shall be entered accordingly.

In light of this Order, Plaintiffs' Motion for a Non-Jury Trial is DENIED as moot. (See Docket Item No. 49.)

Dated: November 8, 2011

JAMES WARE
United States District Chief Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Alyson Cabrera acabrera@gordonrees.com
Mark S. Posard mposard@gordonrees.com
Robert J. Muise rmuise@thomasmore.org
William Joseph Becker bbeckerlaw@gmail.com

**Dated: November 8, 2011**                    **Richard W. Wieking, Clerk**

                                                **By:    /s/ JW Chambers**
                                                     **Susan Imbriani**
                                                     **Courtroom Deputy**